UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 10-22876-CIV-SEITZ/SIMONTON

LIBERTY MUTUAL INSURANCE COMPANY,

        Plaintiff,

vs.

DOWNRITE HOLDINGS, INC., *et al.*,

        Defendants.

_____/

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Liberty Mutual Insurance Company's Motion for Summary Judgment [DE-18], Defendants' Joint Supplement to Their Opposition to Motion for Summary Judgment [DE-38],[1] and Plaintiff's reply [DE-44]. This action arises out of an indemnity agreement executed by Defendants in favor of Plaintiff, Liberty Mutual Insurance Company (Liberty). Liberty, alleging that Defendants breached the indemnity agreement, filed a six count complaint against Defendants alleging causes of action for: (1) specific performance; (2) breach of contract/contractual indemnity; (3) quia timet; (4) equitable subrogation; (5) exoneration; and (6) common law indemnity. Liberty now moves for summary judgment on its breach of contract/indemnity agreement claim. Because there are no genuine issues of material fact, Liberty's motion is granted.

---

[1] Defendants original response opposed summary judgment because Defendants had not had an opportunity to complete discovery at the time Plaintiff filed its Motion for Summary Judgment. Consequently, after the discovery deadline had passed, the Court permitted Defendants to file a supplement to their original response that addressed the substantive issues raised by the Motion for Summary Judgment.

## I. Material Facts[2]

Liberty issues payment and performance bonds. In order to induce Liberty to issue payment and performance bonds on behalf of Defendant Downrite Engineering Corp., all of the Defendants, Downrite Engineering Corp., Downrite Holdings, Inc., Downrite Engineering and Development Corporation, Redland Property Holdings, Inc., Campbell East LLC, Downrite Leasing Corporation, LB Family, LLC, Hurricane Waste Services, Inc., Samuel J. LoBue, Sandra LoBue, Joseph LoBue, and Georgeann LoBue (jointly, Defendants or the Indemnitors), entered into a General Indemnity Agreement (Indemnity Agreement) in favor of Liberty, its affiliates, and its agents. (Compl. Ex. A.) Pursuant to the terms of the Indemnity Agreement, the Indemnitors agreed to:

> exonerate, hold harmless, indemnify, and keep indemnified [Liberty] from and against any and all liability for losses, fees, costs and expenses of whatsoever kind or nature including, but not limited to, pre- and post-judgment interest at the maximum rate permitted by law accruing from the date of a breach of this Agreement or a breach of any other written agreements between or for the benefit of [Liberty] and the Indemnitor(s) and/or Principal(s) (hereinafter referred to as "Other Agreements"), court costs, counsel fees, accounting, engineering and any other outside consulting fees and from and against any and all such losses, fees, costs and expenses which [Liberty] may sustain or incur: (1) by reason of being requested to execute or procure the execution of any Bond; or (2) by having executed or procured the execution of any Bond; or (3) by reason of the failure of the Indemnitors or Principals to perform or comply with any of the covenants and conditions of this Agreement or Other Agreements; or (4) in enforcing any of the covenants and conditions of this Agreement or Other Agreements. Payment by reason of the aforesaid causes shall be made to [Liberty] by the Indemnitors and/or Principals promptly, upon demand by [Liberty], whether or not [Liberty] shall have made any payment therefor and, at [Liberty's] sole option, irrespective of any deposit of collateral.

(Compl. Ex. A., ¶ "Second.") The Indemnitors further agreed that:

---

[2]Defendants have not submitted a statement of material facts. Therefore, pursuant to Local Rule 56.1(b), "[a]ll material facts set forth in [Liberty's] statement . . . will be deemed admitted . . . provided that the Court finds that [Liberty's] statement is supported by evidence in the record."

> If [Liberty] determines, in its sole judgment, that potential liability exist for losses and/or fees, costs and expenses for which the Indemnitors and Principals will be obliged to indemnify [Liberty] under the terms of this Agreement or Other Agreements, the Indemnitors and/or Principals shall deposit with [Liberty], promptly upon demand, a sum of money equal to an amount determined by [Liberty] or collateral security of a type and value satisfactory to [Liberty], to cover that liability, whether or not [Liberty] has: (a) established or increased any reserve; (b) made any payments; or (c) received any notice of any claims therefor.

(*Id.*)  The Indemnity Agreement also stated that:

> In the event of any payment by the Surety, the Indemnitors and Principals further agree that in any accounting between the Surety and the Principals, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement or Other Agreements under the belief that it is, or was, or might be liable for the sums and amounts so disbursed or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety.
>
> \*\*\*
>
> [Liberty] shall have the right, at its option and sole discretion, to adjust, settle or compromise any claim, demand, suit or judgment upon any Bond, unless any Indemnitor or Principal, providing a reasonable legal basis therefor, shall request [Liberty] to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with [Liberty], at the time of such request, cash or collateral satisfactory to [Liberty] in kind and amount to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of [Liberty].

(*Id.* and ¶ "Thirteenth")

After execution of the Indemnity Agreement and in reliance on the Indemnity Agreement, Liberty agreed to issue various payment and performance bonds (the Bonds) naming Downrite Engineering Corp. as principal. (Compl., ¶26; Seegers Aff.,[3] ¶5.) As a result of issuing the Bonds, Liberty has received numerous claims from various entities, including obligees that have

---

[3]Seegers Aff. refers to the Affidavit of Paul Seegers, a Senior Claims Specialist for Liberty, filed at DE-19-1.

3

performance bond claims based on Downrite Engineering Corp.'s allegedly defective or incomplete work and subcontractors, laborers, material suppliers, and rental equipment providers that have made payment bond claims because the have not been paid by Downrite Engineering Corp. for work performed for or materials supplied to Downrite Engineering Corp. (Seegers Aff., ¶6.) Additionally, various claimants have filed lawsuits against Liberty as a result of Downrite Engineering Corp.'s failure to fulfill its obligations on the projects for which the Bonds were issued. (*Id.* at ¶7.)

As a result of the claims and lawsuits and Downrite Engineering Corp.'s refusal to resolve the claims, Liberty had to hire a consultant and attorneys to respond to, investigate, defend against, and resolve the various claims. (*Id.* at ¶8.) As Liberty received claims against the Bonds, it would provide the Indemnitors with written notice of the claims and request that the Indemnitors provide defenses, if any. (*Id.* at ¶9.) Liberty also informed the Indemnitors that if they wanted Liberty to defend any of the claims, the Indemnitors needed to inform Liberty so Liberty could calculate the amount of the collateral security required under the terms of the Indemnity Agreement. (*Id.* at ¶11.) The Indemnitors failed to provide Liberty with any valid defenses to the claims. (*Id.* at ¶12.) As to many of the claims and lawsuits, Indemnitors informed Liberty that they had no defenses or requested that Liberty pay the claims. (*Id.* at ¶15.) As a result, Liberty paid claims totaling $3,786,031.89. (*Id.* at ¶¶16-17.) Liberty, however, has recovered $2,053,380.43 in remaining contract proceeds from the various projects for which it issued bonds. (*Id.* at ¶17.) Thus, it has incurred net damages of $1,732,651.46. (*Id.*)

On August 4, 2010 and August 16, 2010, Liberty demanded, in writing, that the Indemnitors indemnify Liberty for the payments Liberty had made on the bonds. (*Id.* at ¶20.) The Indemnitors have failed to indemnify Liberty. (*Id.* at ¶21.)

## II. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (*quoting Anderson*, 477 U.S. at 251-52)).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a

5

sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

### III. Discussion

Liberty argues that it is entitled to summary judgment because there is no genuine issue of material fact that the Indemnitors breached the Indemnity Agreement and the Indemnitors do not have a valid defense against Liberty's claim. Liberty contends that, under the terms of the Indemnity Agreement, it is entitled to indemnity from the Indemnitors and they have not provided it. Consequently, Liberty asserts that it is entitled to summary judgment. In response, the Indemnitors make only a single argument: Liberty did not make a demand for collateral security prior to filing suit and, thus, Liberty failed to satisfy a condition precedent to filing suit. The Indemnitors, however, have not pointed to any language in the Indemnity Agreement that makes such a demand a condition precedent to filing suit and the Indemnitors have provided no authority to support their argument that such a demand is a condition precedent to a lawsuit based on breach of an indemnity agreement. Thus, whether Liberty made such a demand is irrelevant and does not create a genuine issue of material fact preventing the entry of summary judgment.

Liberty has established, and the Indemnitors have not contested, that Liberty entered into the Indemnity Agreement with the Indemnitors; that demands have been made upon Liberty to make payments as a result of the Bonds issued by Liberty; that, as a result of the demands, Liberty has made payments and incurred costs; that Liberty demanded indemnification from the Indemnitors; and that the Indemnitors have failed to exonerate and indemnify Liberty. Thus, Liberty has established that the Indemnitors breached the Indemnity Agreement. Liberty has also

established, and the Indemnitors have not contested, that Liberty has made net payments in the amount of $1,732,651.46. Liberty has also established, and the Indemnitors have not contested, that under the terms of the Indemnity Agreement, Liberty is entitled to prejudgment interest in the amount of $376,278.20. Liberty has also shown that under the terms of the Indemnity Agreement it is entitled to its reasonably incurred attorneys' fees, consultants' fees, expenses, and costs incurred for investigating, defending against, and resolving the Bond claims and for prosecuting this action. Accordingly, it is hereby

ORDERED that:

1. Liberty Mutual Insurance Company's Motion for Summary Judgment [DE-18] is GRANTED.

2. The Court will enter a separate judgment.

3. This case is CLOSED.

DONE and ORDERED in Miami, Florida, this /5 day of December, 2011.

*[signature]*
PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:   All Counsel of Record